# Appeal of Eli K. Price et al.

1. A. agreed in writing to sell B. certain lots. B. paid part of the purchase money and assigned his contract to C. who held possession of the premises, but never paid the balance of purchase money. C. borrowed money of D., to whom he gave a bond and mortgage on other property owned by him. D. entered judgment on the bond and levied, *inter alia*, on the lots included in the contract. After the entry of this judgment, and years after all the purchase money was due A., C. signed a confession of judgment to A. in an amicable action of ejectment, to be released on payment of a certain sum in ten days. At the end of the ten days A. filed the confessed judgment, and under a writ of *hab. fac. poss.* possession was delivered by the sheriff to the attorney for the plaintiff therein. Subsequently, the sheriff in pursuance of a sale on a *fi. fa.* issued on D.'s judgment, delivered a deed to D. for C.'s interest in the lots. D. filed a bill to compel A. to execute a deed for the lots to her, on payment of the balance of purchase money still due. The Master found that there was no collusion between the parties to the title, for the purpose of defrauding D:

*Held*, that the bill should be dismissed. It was not A.'s duty, before taking the confession of judgment for the security of his purchase money, to

[Price's Appeal.]

search the record to see if a judgment creditor would be affected thereby; nor would it have been his duty to take care of D.'s judgment if he had known of it. D. should have protected herself by paying the purchase money and controlling the title.

*Held also,* That in the absence of fraud in fact, the taking of the confession of judgment, and allowing the time given for payment to expire, before its entry on the docket was of no significance.

2. Forrester *v.* Hanaway, 1 Norris, 218, distinguished.

February 24th, 1885.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN J. absent.

APPEAL from the Court of Common Pleas of *Lackawanna county:* In Equity.    Of January Term 1885, No. 224.

Bill in equity between Bertha Frank, complainant, and Eli K. Price, Joseph Pancoast, B. H. Throop their attorney in fact, and Jane James, defendants, praying for the specific performance of a contract for the sale of real estate.

The defendants filed an answer and the cause was referred to John P. Albro, as Master and Examiner, before whom the following facts appeared:—On August 14th, 1865, Throop, as attorney in fact for Price and Pancoast, owners of unimproved building lots, contracted in writing to sell lots Nos. 23 and 24 Block 1, to one Coleman for $300, of which the latter paid at various times $149.70, and then transferred his contract to Barber, who built a house on the premises and lived there until August, 1878, without paying any further purchase money. In 1866 Price and Pancoast contracted to sell lots 25, 26, 27 and 28, Block 21, to one James, for $400. James paid $160 on account, and transferred his contract to Barber also. The latter built a small house on the premises and retained possession of these lots also, until August, 1878, without paying additional purchase money.

Upon the basis of this and other property as security, Barber, in the latter part of June, 1872, obtained a loan of $2,000, from Bertha Frank, the complainant, through her trustee, and Barber gave her a bond and mortgage on other property to which he held title, and which Bertha Frank's attorney valued, at the time, at $3,000. Judgment was entered on the bond June 28th, 1872, and kept duly revived. On account of this loan Barber paid at various times, $497.66. Several writs of execution, issued on this judgment, were stayed; but a *pluries fi. fa.* was issued to September Term, 1878, under which the sheriff levied on Barber's interest in lots 23 and 24, Block 1.

On August 5th, 1878, an agreement for an amicable action of ejectment was entered into, between Price and Pancoast, plaintiff, and Barber, defendant, for all the lots in which Barber had a contract interest, and judgment was confessed to the

plaintiffs, conditioned that if Barber should pay plaintiffs $1.090.56 with interest and costs within ten days the judgment should be released; otherwise plaintiffs to be entitled to a writ of *habere facias possessionem* at once.　This action was filed August 15th, 1878, and the sheriff returned, August 20th, 1878, that he had delivered possession of the lands mentioned in the writ to the plaintiffs therein.　,Barber then leased said premises from Price and Pancoast, and remained in possession as their tenant.

On June 7th, 1879, the sheriff, under the execution on Bertha Frank's judgment, sold Barber's interest in the mortgaged premises and in the said lots to Bertha Frank, and subsequently delivered deeds therefor to her.　Possession of the mortgaged premises, then valued by witness at from $4,000 to $4,500, was taken by Bertha Frank, and she brought ejectment for lots 23 and 24, Block 1; which was still pending when this bill was filed.

In November, 1879, Mrs. Jane James purchased said last mentioned lots from Price and Pancoast for $2,600, paying $50 down, the balance to be paid on receiving a refunding bond to secure her in case Bertha Frank succeeded in her action of ejectment.　Barber moved December 31st, 1879, and Mrs. James took possession.

The testimony showed a tender to Throop of $350, intended to cover the balance alleged to be due Price and Pancoast on their contract with Coleman, which was refused.　Bertha Frank then filed this bill, to perpetually enjoin Mrs. James from paying the purchase money to Price and Pancoast, and to compel them to convey to her, upon her paying the purchase money due on the Coleman contract; alleging that the amicable action of ejectment was entered into by the defendants and Barber collusively and fraudulently, in order to defraud and hinder her in the collection of her debt.

The Master reported that there was no evidence of any benefit to Barber, or of collusion to defraud creditors, as between the owners of the several titles, and recommended that the preliminary injunction which had been granted to restrain Mrs. James from paying the purchase money, be dissolved and complainant's bill dismissed.

Upon exceptions filed, the court, HANDLEY, P. J., delivered the following opinion: "The case of Forrester *v.* Hanaway, 1 Norris, 218, controls the main questions in this case.　For the reasons stated in that case we sustain the exceptions in this case, and direct counsel for the plaintiff to frame decree, in accordance with this relief prayed for."

A decree was accordingly entered making the injunction perpetual, and directing the defendants to make a deed of the

property in question to the complainant, upon payment by her, into court, of $375.77, the balance of purchase money due on the Coleman contract. Thereupon the defendants took this appeal, assigning for error, the decree of the court.

*Ira H. Burns*, (with whom were *H. M. Edwards* and *H. A. Knapp*), for appellants.—In 1878, when the holders of the legal title proceeded against Barber to obtain possession of the purchase money, nearly eleven years had elapsed since any payment had been made on the contract. The sheriff's deed to Bertha Frank, for Barber's interest in the lots, was not delivered until a year after the entry of the legal owners; and she has failed to establish that this re-entry was intended as a fraud against her, or that she has suffered any pecuniary loss from it.

After a careful scrutiny of the testimony, the Master reported that there was in fact no collusion, no fraud, no injury to Mrs. Frank, and no intention with which the legal owners could be charged to work such injury.

The decision in Forrester *v.* Hanaway, 1 Norris, 218, was upon the express ground that the evidence showed collusion and a fraudulent attempt to hinder and delay *bona fide* creditors; and that judgment creditors would lose their claims, if the equity of McNamara were not extended to them. In the present case the Master specifically found that Bertha Frank has been reimbursed by the acquisition of the mortgaged premises. The legal owners had no actual knowledge of Barber's indebtedness, and if they are to be charged with constructive notice, it must be with constructive knowledge of a judgment bond accompanying a mortgage on lots in which they had no interest. They had a perfect right to recover the possession as they did. Where liens are entered upon an equitable estate, the value of the liens depends upon the estate, and they survive or perish with it: Damon *v.* Bache, 5 P. F. S., 67; Campbell & Pharo's Appeal, 12 Casey, 247; Cover *v.* Black, 1 Barr, 493; Watson *v.* Willard, 9 Barr, 89; Grevemeyer *v.* Ins. Co., 12 P. F. S., 340.

*J. H. Campbell* and *S. J. Strauss* for appellee.—The evidence showed actual fraud. It showed that in 1878 Barber had more than enough real estate to pay his debts. His land was levied on by the sheriff; he voluntarily confessed judgment on an amicable ejectment in favor of Throop *et al.*; the purchase money for which the alternative judgment was confessed was in excess of his actual indebtedness on this account; the amicable ejectment was kept quiet until the ten days had expired, then put on record, and without delay possession un-

der it formally returned.    By the transaction Throop *et al.* obtained for $304.37 real estate worth $2,600, as shown by its immediate sale for that sum.    " One who has a *bona fide* debt against an insolvent man. may take property at a fair price in payment of it. . . . . . When it is sold either in payment of a debt or for cash at a price considerably below its real value, the conveyance may be impugned by creditors without proof of more than the vendee's knowledge that the vendor was indebted.    In such a case the parties cannot choose but know that the creditors are cheated to the extent of the difference between the price and the value; and the transaction being touched with fraud is tainted throughout" : Kaine *v.* Weigley, 10 Harris, 182; Twyne's Case, 1 Sm. L. C., 33.

The present case is undoubetedly ruled by Forrester *v.* Hanaway, 1 Nor., 218.

Mr. Justice GORDON delivered the opinion of the Court, April 27th, 1885.

We agree with the learned Master, that the injunction should have been dissolved and the bill dismissed.    The court below was mistaken in supposing that this case was ruled by Forrester *v.* Hanaway, 1 Nor., 218.    There the ruling was put on the ground of a collusive and fraudulent attempt to hinder and delay *bona fide* creditors.  Mr. Justice MERCUR, in delivering the opinion of the Court says :  " All the facts proved naturally lead the mind to the conclusion that the primary arrangement was to remove the estate of McNamara out of the reach of his creditors."    But the present contention develops not one particle of evidence that either of the parties intended anything of a fraudulent character.

The purchase money under the contract had long been due when the amicable confession in ejectment was made ; Throop knew nothing about Bertha Frank's judgment, and if he had known it was not his business to take care of it.    It would, indeed, be intolerable if a vendor, before he could take a confession in ejectment for the purpose of recovering his purchase money, must first search the dockets to learn whether or not there was a judgment creditor who might be affected thereby. Such creditors must take care of themselves ; if they desire to protect their judgments against the holder of the legal estate they may pay the purchase money and thus control the title. So might the appellee have done, but failing in this, either through ignorance or neglect, she cannot now be heard to complain.    There being no fraud in fact, the taking of the confession, and allowing the time given for payment to expire before its entry on the docket, were in themselves of no special significance.    Had other circumstances indicated a collusion between the parties for the purpose of defrauding the appellee,

this retention of the confession until the last day of grace, would undoubtedly have been evidence bearing upon the fraudulent intention, but without such circumstances it was of no more significance than the entry of a judgment note on the day when due, and the immediate issue of an execution thereon.

The decree of the court below is reversed, and the bill dismissed at the costs of the appellee.